**ELLIOTT v. LOCAL NO. 968, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA et al.**

Civ. A. No. 8041.

United States District Court
S. D. Texas, Houston Division.
April 26, 1954.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, N.L. R.B., Washington, D.C., Elmer P. Davis, Chief Law Officer, Sixteenth Region, Willis C. Darby, Jr., Atty., N.L.R.B., Fort Worth, Tex., for plaintiff.

Mullinax & Wells, Houston Clinton, Jr., Dallas, Tex., and Dixie & Ryan, Chris Dixie, Houston, Tex., for respondents.

Rawlings, Sayers, Scurlock & Eidson, Joseph A. Jenkins, Fort Worth, Tex., for charging party.

KENNERLY, Chief Judge.

This is a hearing on the petition for injunction of Edwin A. Elliott, Regional Director of the Sixteenth Region of the National Labor Relations Board, filed un-

der Section 10(*l*) of the National Labor Relations Act as amended 29 U.S.C.A. § 141, et seq., against:

(a) Local No. 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, sometimes called Local No. 968;

(b) International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL, sometimes called International; and

(c) M. W. (Dusty) Miller, as Trustee of Local No. 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL.

(d) Others interested in the suit, but not parties, are the Red Ball Motor Freight, Inc., sometimes called Red Ball, and the Red Arrow Freight Lines, Inc., sometimes called Red Arrow, who are collectively or individually sometimes called "Charging Party."

(e) Also mentioned is the Herrin Transportation Company, sometimes called Herrin, and the T.S.C. Motor Freight Lines, Inc., sometimes called T.S.C.

On November 30, 1953, the Red Ball Motor Freight, Inc., a corporation, filed a charge with the National Labor Relations Board, alleging violations on the part of the Teamsters International, Teamsters Local No. 968, and various other constituent Locals, of Section 8(b) (1) (A), 8 (b) (2), and 8 (b) (4) (A) and (B) of the Act. The investigation which followed led the Regional Director, i. e., the officer to whom the matter was referred, to believe that a complaint should issue, and he being duly authorized notified counsel for respondents that the investigation had disclosed violations of the Act and that the Regional Director was prepared to proceed by injunction, etc., in this Court under Section 10(*l*) of the Act.

As provided for in the rules and regulations of the National Labor Relations Board, counsel for the respondents were invited to agree to an informal settlement agreement in order to dispose of the matter. Such "Settlement Agreement" was agreed to and is in evidence and is quoted in the margin.[1] It was designed to cor-

---

1. Such Settlement Agreement and Notice are as follows:

"United States of America

"National Labor Relations Board

"In the matter of Local No. 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America AFL; and M. W. (Dusty) Miller, Trustee of Local No. 968, International Bro. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

"Case No.    16–CC–22

"Settlement Agreement

"The undersigned labor organizations (herein called the Union) and the undersigned charging party (herein called the Charging Party), in settlement of the above matter, and subject to the approval of the Regional Director for the National Labor Relations Board (Herein called the Regional Director), hereby agree as follows:

"Posting of Notice—Upon approval of this Agreement, the Unions will post immediately in conspicuous places in and about its offices, including all places where notices to members are customarily posted, and maintain for a period of at least sixty (60) consecutive days from the date of posting, copies of the Notice to All Members attached hereto and made a part hereof. The Unions will submit forthwith signed copies of said Notice to the Regional Director who will forward them to the employer whose employees are involved herein, for posting, the employer willing, in conspicuous places in and about the employer's plant where they shall be maintained for a period of at least sixty (60) consecutive days from the date of posting.

"Compliance with Notice—The Unions will comply with all the terms and provisions of said Notice.

"This agreement concerns only the alleged violation of Section 8(b) (4) on the part of the International and Local 968 in the Houston, Texas area.

"Neither the execution of this settlement agreement nor anything contained herein, nor the posting of the notice attached hereto shall constitute an agreement or admission that any of the labor organizations signatory hereto have engaged in any unlawful act or in any of the acts charged by the employer herein.

"Withdrawal—The Charging Party hereby requests the withdrawal of the charge in this matter, such withdrawal to become effective when the Regional Director is satisfied that the provisions of this Agreement have been carried out.

"Refusal to Issue Complaint—In the event the Charging Party fails or refuses to become a party to this Agreement, then, if the Regional Director in his discretion believes it will effectuate the policies of the National Labor Relations Act, he shall decline to issue a Complaint herein and this Agreement shall be between the Union and the undersigned Regional Director. A review of such action may be obtained pursuant to Section 102.19 of the Rules and Regulations of the Board if a request for same is filed within ten (10) days thereof. This Agreement is contingent upon the General Counsel sustaining the Regional Director's action in the event of a review.

"Performance—Performance by the Union with the terms and provisions of this Agreement shall commence immediately after the Agreement is approved by the Regional Director, or, in the event the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt by the Union of advice that no review has been requested or that the General Counsel has sustained the Regional Director.

"Notification of Compliance—The undersigned parties to this Agreement will each notify the Regional Director in writing what Steps the Union has taken to comply herewith. Such notification shall be made within five (5) days, and again after sixty (60) days, from the date of the approval of this Agreement, or, in the event the Charging Party does not enter into this Agreement, after the receipt of advice that no review has been requested or that the General Counsel has sustained the Regional Director. Contingent upon compliance with the terms and provisions hereof, no further action shall be taken in the above case.

"Local 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America; International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL; and M. W. (Dusty) Miller, Trustee of Local 968, International Bro. of Teamsters, et al.

"(s) M. W. Miller
   "(Name and Title)

"Date executed January 11, 1954

"/s/ Edwin A. Elliott
"Regional Director, National Labor Relations Board.

Henry W. English and Red Ball Motor Freight Lines, Inc.
(Charging Party)
"/s/ H. E. English
(Name and Title)
"Recommended /s/ Willis C. Darby
"Attorney, National Labor Relations Board.
Date Approved    January 12, 1954

"Notice
to All Members
of
"Local No. 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America

"Pursuant to a Settlement Agreement with the Regional Director of the National Labor Relations Board, and in order to effectuate the policies of the National Labor Relations Act, we hereby give notice that:

"We Will Not induce or encourage the employees of Herrin Transportation Company, T. S. C. Motor Freight Lines, Inc., or any other employer to engage in a strike or concerted refusal in the course of their employment to use, transport or otherwise handle or work on goods or to perform any services where an object thereof is to require Herrin Transportation Company, T. S. C. Motor Freight Lines, Inc., or any other employer, to cease using, handling, selling, transportating or otherwise dealing in the products of, or to cease doing business with Red Ball Motor Freight, Inc., Red Arrow Freight Lines, Inc., or with any other employer or person, except insofar as such action is permitted under Section 8(b) (4) of the Act.

We Withdraw any instruction, request of appeal to employees of Herrin Transportation Company, T. S. C. Motor Freight Lines, Inc., or any other employer, to refrain from receiving from, or otherwise handling Red Arrow Freight Lines, Inc.

"LOCAL NO. 968, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA

"(Labor organization)

"Dated————————  By ————————————————

"(Title of Officer)

"INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, AFL

"(Labor organization)

"Dated————————  By ————————————————

"(Title of Officer)

"M. W. MILLER, AS TRUSTEE OF LOCAL NO. 968, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL

"(Labor organization)

"Dated————————  By ————————————————

(Representative)
(Title)

"This notice must remain posted for 60 days from the date hereof, and must not be altered, defaced, or covered by any other material."

rect the situation and among other things to make unnecessary such application for an injunction.

The "Settlement Agreement" in substance provided that the Teamsters International Union and Local No. 968 would allow the normal interchange and interlining of freight between Red Ball, Red Arrow, Herrin, T.S.C., and other common carriers who had contracts with Teamsters Local No. 968, and notice was given to the members of Local No. 968 and other agents of the Teamsters Local and International.

But after such notice, the normal interchange of freight between Red Ball, Red Arrow, Herrin, T.S.C. and other *companies was not re-established. The Teamsters officials took no affirmative action to see and require that the members of Local No. 968 handled Red Ball and Red Arrow freight, and did not undertake to advise their members of the true meaning of the agreement which had been negotiated for them.* This suit followed.

The hearing was upon complaint, answer, stipulations of the parties, depositions of witnesses, documentary evidence, briefs and oral argument, etc.

(a) The facts are not greatly in dispute. I quote the following stipulation of the parties:

"Stipulation

"The parties to this proceeding, Edwin A. Elliott, Regional Director of the Sixteenth Region of the National Labor Relations Board, Petitioner, and the Respondents herein, Local No. 968, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; and the said International, and M. W. (Dusty) Miller, as Trustee of Local 968, hereby stipulate through their attorneys as follows:

"The evidence in this proceeding will be recorded by deposition of witnesses to be compiled in a record for submission to the Court, testimony to be taken the same as if in open court.

"In addition to the attorneys for the above parties, participation shall include counsel for Red Ball Motor Freight, Inc., who shall have opportunity to appear by counsel and present any relevant testimony

"All objections shall be referred to the Court for ruling with the record, objections to be made in this record by counsel as they may be advised. Where an objection is a matter of general application, a standing objection may be urged by any participant.

"The parties further stipulate and agree that the following facts are true and correct:

"1.   Petitioner, Edwin A. Elliott, is Regional Director of the Sixteenth Region of the National Labor Relations Board.

"2.   Respondent, Local Union No. 968, is an unincorporated association and a labor organization within the meaning of Sections 2(5), 8(b), and 10(l), of the Labor Management Relations Act of 1947; has its principal office in Houston, Texas and is engaged within this judicial district in promoting and protecting the interest of its employee members and in transacting business.

"3.   Respondent, International Union, is an unincorporated association and a labor organization within the meaning of Sections 2(5), 8(b), and 10(l) of the Act, with principal office in Washington, D.C.

"4.   The Respondent, M. W. (Dusty) Miller, is Trustee of Local No. 968 and holds the position of International Representative of the Respondent International. The Respondent, M. W. (Dusty) Miller, was appointed Trustee of Respondent Local 968 on or about October 9, 1953 by the President of the Respondent International.

"5.   The jurisdiction of this Court is conferred by Section 10(l) of the Act.

"6.   On November 30, 1953, Red Ball Motor Freight, Inc. filed a charge against Respondents alleging violation of Sections 8(b) (4) (A) and (B), inter alia.

"7.   The said charges were referred to Petitioner, as the Regional Director for the Sixteenth Region of the Board, for investigation. Petitioner has investigated the aforesaid charges.

"8.   On January 7, 1954, Red Ball Motor Freight, Inc. filed an amendment to the charge originally filed on November 30, 1953, said amending charge alleging inter alia that Respondents have engaged in and are engaged in unfair labor practices within the meaning of Sections 8(b) (4), Subsections (A) and (B) of the Act.

"9.   The said charges were referred to Petitioner as the Regional Director for the Sixteenth Region of the Board, for investigation. Petitioner has investigated the aforesaid charges.

"10.   On January 11, 1954 the Respondent unions and the Charging Party and counsel for the Regional Director executed a certain settlement agreement pursuant to Section 101.7 of the Statements of Procedure of the National Labor Relations Board. On January 12, 1954, such settlement agreement was approved by Petitioner as Regional Director of the National Labor Relations Board. A true and correct copy of the said settlement agreement and the attached notice to all members therein referred to, is attached to the Respondents' answer in this cause.

"11.   Red Ball Motor Freight, Inc. is a motor freight carrier engaged in the interstate transportation of goods and commodities with terminal and dock facilities in Houston, Texas.

"12.   Red Arrow Freight Lines, Inc. is a motor freight carrier engaged in the interstate transportation of goods and commodities and has a terminal and dock facilities in Houston, Texas, and is a corporation.

"13.   Herrin Transportation Company is engaged in interstate transportation of goods and commodities

**150**

and has a terminal and dock facilities in Houston, Texas.

"The above stipulation is for the limited purpose of this hearing, Civil Action 8041 in the United States District Court for the Southern District of Texas, to narrow the facts and expedite the trial of the case, and is not to be used in any other case or proceeding unless the parties herein expressly agree. And this stipulation will be supplemented by the testimony to follow hereafter."

(b) There is also the following stipulation:

"It's hereby stipulated and agreed that representatives of the National Labor Relations Board had knowledge of the large majority of the various events that took place prior to January 1, 1954, in connection with this case on that date, January 1, 1954, and had such knowledge on January 12, 1954, when the settlement agreement was approved in this matter."

There are other stipulations which are referred to, but it does not seem necessary to quote them here.

(c) The extent to which respondents complied with the settlement agreement and all that respondents did with respect thereto is set forth in respondents' brief, from which I quote as follows:

"As the Board's brief shows, the Union did three things to comply with the settlement agreement: (1) It posted the notices in conspicuous places at the union hall, and notices were also posted by others at the various freight terminals around Houston; (2) The union directed all of its business agents to call these notices to the attention of the membership and to cause them to be read; (3) The union caused its attorney, the undersigned Chris Dixie, to appear at the Union meeting to make explanation of the posted notice and of the applicable law. This address was taken down by a court reporter, who happens to be Mr. Goodale who has been serving recently as reporter for this United States District Court. At the request of the Government and by agreement of Respondents the said attorney's talk has been transcribed and has been made a part of this record."

(d) I adopt the following paragraphs of Plaintiff's suggested findings of fact:

"At all times material herein, Respondents have been engaged in a labor dispute with Red Ball and Red Arrow to secure recognition as the collective bargaining representative of Red Ball's and Red Arrow's employees, and to bargain with Red Ball and Red Arrow on behalf of said employees, although neither of the Respondents nor an affiliated labor organization has been certified as a representative of Red Ball's or Red Arrow's employees in accordance with Section 9 of the Act.

"Since on or about June 1, 1953, Respondents have engaged in, and by orders, instructions, directions, appeals, requests, equivocal statements, and other means, have induced and encouraged the employees of Herrin, TSC, and of other employers, to engage in strikes, or concerted refusals in the course of their employment to use, manufacture, transport, or otherwise handle or work on goods, articles, materials, or commodities, or to perform services, objects thereof being: (1) to force or require Herrin, TSC, and other employers to cease doing business with Red Ball and Red Arrow, and (2) to force or require Red Ball and Red Arrow to recognize or bargain with Respondents and/or affiliated labor organizations as collective bargaining representatives of Red Ball's and Red Arrow's employees, although neither of the Respondents nor an affiliated labor organization has been certified as the representative of said employees

in accordance with Section 9 of the Act.

"The Acts and conduct of Respondents as set forth, occurring in connection with the operations of Red Ball, Red Arrow, Herrin, TSC, and other employers affect and have a close, intimate, and substantial relation to trade, traffic, and commerce and tend and have led to labor disputes burdening and obstructing commerce and the free flow of commerce.

"It may reasonably be anticipated that, unless restrained, Respondents will engage in and continue the same, or similar or like, conduct with respect to the employees of Herrin, TSC and other employers, objects thereof being: (1) to force or require Herrin, TSC or any other employer to cease using, selling, handling, transporting or otherwise dealing in the products of Red Ball and Red Arrow or to cease doing business with Red Ball and Red Arrow, and (2) to force or require Red Ball and Red Arrow to recognize or bargain with Respondents or affiliated labor organizations as collective bargaining representative of Red Ball's and Red Arrow's employees, although neither of the Respondents nor an affiliated labor organization has been certified as the representative of said employees in accordance with Section 9 of the Act. Thereby, Respondents will continue to violate Section 8(b), Subsections 4(A) and (B) of the Act, and cause irreparable injury to the policies of the Act and the public welfare before the Board can finally adjudicate the matters involved."

1. The questions of law are somewhat clarified by the following from respondents' brief (italics mine):

"In this case, a labor dispute originated in March, 1953, and there is no contention by the Government that a strike by the employees was illegal as such. Being a strike for recognition it was a lawful labor dispute under the Taft-Hartley Act. National Labor Relations Board v. International Rice Milling Company, 341 U.S. 665, 71 S.Ct. 961 [95 L.Ed. 1277].

"The Government, however, introduced evidence principally by one I. A. Jester, a former official of Respondent Local No. 968, to the effect that he caused a work stoppage at Herrin Transportation Company in September, 1953, in order to force Herrin to cease doing business with the charging parties, Red Arrow and Red Ball. Jester testified that he caused this work stoppage to occur at Herrin on a Friday, resigned from his position as Union Business Agent the following Monday, and within a period of ten days was hired by Herrin in a supervisory capacity. (Tr. 223.) However incredulous we may be at the chain of events by which Jester was made a supervisory employee by an employer whom he had unjustly caused to be struck, *it must be admitted by Respondent for purposes of this hearing, that Jester's testimony constitutes direct evidence of the violation of Section 8(b) (4) of the Taft-Hartley Act and of itself would support the petition for preliminary injunction but for the affirmative defenses and other issues of law which exist in this case.*"

2. Under the facts shown by the record to have existed on and prior to the date of the "Settlement Agreement" (January 12, 1954), plaintiff was then entitled to an injunction such as is now prayed for.

3. The "Settlement Agreement" was not intended to take away from plaintiff his right to injunction, but was made in recognition of such right and to give plaintiff, by agreement, the same relief that he would have had by injunction.

4. Respondents have not fully complied with the terms and conditions of such "Settlement Agreement", and plaintiff, under all the facts now shown by this record—either including or exclud-

ing such "Settlement Agreement"—is *now* entitled to injunction as prayed for in his complaint.

5. As stated, respondents say in their brief that in compliance with the "Settlement Agreement", they posted notices in conspicuous places at the Union Hall and notices were also posted by others at the various freight terminals around Houston; they directed all of their business agents to call these notices to the attention of the membership and to cause them to be read; they caused their attorney to appear at the union meeting and make an explanation of the posted notice and of the applicable law, etc. Then respondents, standing upon Section 502 of such Act, ask in their brief what more they were required to do.

▪ It is clear I think that Section 502 must be construed in connection with other portions of the Act and particularly Section 8, and that in addition to what respondents may have done, they should have *required,* and should now *require,* their members to cease and desist from the unlawful labor practices charged against them prior to such "Settlement Agreement", and still charged against them, and should have *required,* and should now *require,* them to carry out and comply with such agreement, as herein construed.

▪ 6. I adopt plaintiff's requested conclusions of law, as follows:

"Petitioner has, and there is, reasonable cause to believe that Respondents have engaged in unfair labor practices within the meaning of Section 8(b), subsections 4(A) and (B) of the Act, and affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, and will continue to engage in such unfair labor practices.

"To prevent irreparable injury to the policies of the Act, and to the public welfare, and for the purpose of effectuating the policies of the Act, it is essential, just, proper, and appropriate that, pending the final adjudication by the Board of the matters involved herein, Respondents, and their officers, members, representatives, agents, servants employees, attorneys, and all other persons in active concert or participation with them, be enjoined and restrained from the commission and continuation of the Acts and conduct set forth above, acts in furtherance and support thereof, and like or related acts or conduct, and from permitting any such to remain in effect, whose commission in the future is likely or may be fairly anticipated."

Let order be prepared and presented, granting injunction as prayed for by plaintiff herein and as discussed herein.